# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MEDWELL, LLC,**<br><br>　　Plaintiff,<br><br>v.<br><br>**CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY, CIGNA HEALTHCARE OF NEW JERSEY, INC., CONNECTICUT GENERAL LIFE INSURANCE COMPANY, JOHN DOES 1–20, JANE DOES 1–20, XYZ CORPORATIONS 1–20, and ABC PARTNERSHIPS 1–20,**<br><br>　　Defendants. | Civ. No. 20-10627 (KM) (ESK)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　MedWell, LLC is a healthcare practice that regularly provided medical services to patients insured by Cigna[1] and would seek payment from Cigna. Cigna claimed that it had overpaid MedWell for a certain period and so stopped paying MedWell. MedWell sued Cigna in state court alleging state-law claims. Cigna removed to this Court, asserting that one claim was completely preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* Now before the Court is MedWell's motion to remand. (DE 8.)[2] For the foregoing reasons, the motion is **DENIED**.

---

[1]　MedWell sues Cigna Corporation as well as certain subsidiaries, affiliated entities, and to-be-identified defendants. For simplicity, I refer to all defendants collectively as "Cigna."

[2]　Certain citations to the record are abbreviated as follows:

　　Compl. = Complaint, attached as Exhibit A to Defendants' Notice of Removal (DE 1-2)

　　　Notice = Defendants' Notice of Removal (DE 1)

　　　Mot. = MedWell's Motion to Remand (DE 8-1)

I.  **BACKGROUND**

   A. Facts

MedWell is a healthcare practice that, for at least fifteen years, has treated patients insured by Cigna. (Compl. ¶¶ 9, 15.) After treating patients, MedWell would submit claims to Cigna, which would review the claim and then pay MedWell directly for the services rendered. (*Id.* ¶ 17.)

In 2017, Cigna had MedWell submit the records for twenty patients so Cigna could do an audit. (*Id.* ¶¶ 20–25.) Those records related to services which MedWell had provided to patients from 2014 to 2017. (*Id.* ¶ 22.) Two years passed without word from Cigna on the audit's results, while MedWell continued to treat Cigna-insured patients and receive payment from Cigna. (*Id.* ¶¶ 29–30.)

In August 2019, however, Cigna stopped paying any claims MedWell submitted. (*Id.* ¶ 31.) When MedWell objected to this nonpayment, Cigna replied that its audit had identified "damages" of over $800,000 due to overbilling by MedWell (although MedWell contested Cigna's allegation and argued that any overbilling would only apply to a small percentage of claims). (*Id.* ¶¶ 31–38.) Although Cigna only identified overbilling for the twenty patients who were the subject of the audit, Cigna is withholding monies owed to MedWell for *all* claims submitted after around August 2019, even though those claims are "wholly unrelated" to the patient records which Cigna reviewed. (*Id.* ¶¶ 31, 45.)

---

Opp. = Defendants' Opposition to Motion to Remand (DE 13)

Ex. A = Exhibit A to Defendants' Opposition to Motion to Remand (DE 13-2)

Reply = MedWell's Reply Brief in Support of its Motion to Remand (DE 14)

Sur-reply = Cigna's Sur-reply (DE 22)

Penaro Decl. = Declaration of Steven L. Penaro (22-2)

Plan 1 = Exhibit A to Sur-reply (DE 22-3)

Plan 2 = Exhibit B to Sur-reply (DE 22-4)

### B. Procedural History

To recover for this nonpayment, MedWell sued Cigna in New Jersey Superior Court and alleged state-law claims for (1) breach of contract, (2) breach of the implied covenant of good faith, (3) quantum meruit, (4) unjust enrichment, (5) promissory estoppel, (6) equitable estoppel, (7) tortious interference with business relations, (8) tortious interference with prospective economic advantage, and (9) negligence. (*Id.* ¶¶ 54–107.)

Cigna removed to this Court, asserting that (1) some, if not all, of Cigna plans at issue are governed by ERISA, and (2) MedWell's unjust enrichment claim is preempted by ERISA because MedWell effectively seeks to collect "ERISA-regulated benefits" from Cigna. (Notice at 3–4.)

MedWell moved to remand, namely arguing that Cigna's notice of removal failed to plead complete preemption. (Mot. at 2–8.) In opposing MedWell's motion, Cigna walked through the prongs of complete preemption and attached claims forms which MedWell submitted to Cigna, arguing that these forms showed that MedWell could collect benefits from Cigna on behalf of patients. (Opp.; Ex. A.) In reply, MedWell argued that Cigna needed to submit the plans themselves so that the Court could review whether patients could validly assign claims to MedWell. (Reply at 9–11.)

The Court asked Cigna to respond to this argument (DE 21), and Cigna provided excerpts of two plans of Cigna-insured patients who received services from MedWell in 2019 and 2020. (Penaro Decl. ¶¶ 7–15.) Both plans state that "Medical benefits are assignable to the provider." (Plan 1 at 4; Plan 2 at 3.)

## II. DISCUSSION AND ANALYSIS
### A. Removal and ERISA Preemption

Defendants may remove cases brought in state court that arise under federal law. 28 U.S.C. §§ 1441(a), 1331. But a removed action must be remanded when "it appears that the district court lacks subject matter jurisdiction." *Id.* § 1447(c). So, on a motion to remand, I must determine whether the action arises under federal law.

3

Under the well-pleaded complaint rule, an action "arises under" federal law "only if a federal question is presented on the face of the plaintiff's . . . complaint." *Dukes v. U.S. Healthcare*, 57 F.3d 350, 353 (3d Cir. 1995). Here, the complaint only pleads state-law claims (Compl. ¶¶ 54–107), but there is an exception to the well-pleaded complaint rule "for matters that Congress has so completely preempted that any civil complaint that falls within this category is necessarily federal in character." *Lazorko v. Pa. Hosp.*, 237 F.3d 242, 248 (3d Cir. 2000). Section 502 of ERISA is one such statutory provision that completely preempts any state causes of action within its scope. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). That section provides that "[a] civil action may be brought—(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A claim is completely preempted by § 502(a) if "(1) the plaintiff could have brought the claim under § 502(a), and (2) no other legal duty supports the plaintiff's claim." *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (emphasis omitted) (citing *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004)).

As the removing party, Cigna bears the burden of showing that each prong is satisfied. *Carlyle Inv. Mgmt. LLC v. Moonmouth Co.*, 779 F.3d 214, 218 (3d Cir. 2015); *see also Pascack*, 388 F.3d at 401. If "any doubt exists" over whether Cigna can make that showing, then I must remand. *See Carlyle*, 779 F.3d at 218.

## B. ERISA Complete Preemption Prong 1

This first prong entails two inquiries: "[w]hether the plaintiff is the *type* of party that can bring a claim pursuant to Section 502(a)(1)(B)" and "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to Section 502(a)(1)(B)." *Progressive Spine & Orthopaedics,*

4

*LLC v. Anthem Blue Cross Blue Shield*, Civ. No. 17-536, 2017 WL 4011203, at *5 (D.N.J. Sept. 11, 2017).

### 1. Type of Party

By the statute's terms, only participants or beneficiaries may bring a § 502(a) claim. *Pascack*, 388 F.3d at 400. Nonetheless, healthcare providers, like MedWell, may bring such claims if they have a valid assignment of benefits from plan participants. *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014). That is, "when a patient assigns payment of insurance benefits to a healthcare provider, [the] provider gains standing to sue for that payment." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 450 (3d Cir. 2018) (citation omitted) (alteration in original). In response to such rulings that assignments may confer ERISA standing, insurers have put anti-assignment clauses into their contracts, and such clauses are enforceable. *Id.* at 447–48. Thus, to assure themselves of a valid assignment and thereby jurisdiction, courts have reviewed (1) authorization forms from healthcare providers to determine whether patients assigned benefits, and (2) patients' insurance plans to determine whether there is an anti-assignment clause. *Progressive*, 2017 WL 4011203, at *7; *N. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co.*, Civ. No. 18-15631, 2019 WL 6317390, at *3 (D.N.J. Nov. 25, 2019), *report & recommendation adopted by* 2019 WL 6721652 (Dec. 10, 2019).

MedWell does not contest that the claims forms show that MedWell attempted to collect payment from Cigna based on a purported assignment of benefits. *See also Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 325 (2d Cir. 2011) (holding that similar forms showed an assignment). To prove that such assignments were valid (*i.e.*, no anti-assignment clause could invalidate them), Cigna produced two "representative" plans pursuant to which MedWell submitted claims for reimbursement. (Sur-reply at 2–3 & n.3.)[3] Both

---

[3]   To be sure, MedWell seeks renumeration for an unspecified number of claims that could involve varying plans, while Cigna has provided only two "representative"

5

plans affirmatively allow for assignments to a provider. (Plan 1, at 4; Plan 2, at 3.) So it would seem that Cigna has made the requisite showing. *See Progressive*, 2017 WL 4011203, at *7; *N. Jersey Brain & Spine Ctr.*, 2019 WL 6317390, at *3.

Nonetheless, MedWell argues that only pre-2017 claims and plans are relevant to this case because Cigna is withholding payments due to overbilling identified in patient records from 2014 to 2017. (Reply at 1.) Plans or claims that post-date 2017, MedWell contends, are not relevant because the Complaint does not raise causes of action relating to claims that MedWell submitted post-2017. (*Id.*) MedWell reimagines its own Complaint. The unjust enrichment count simply alleges that "MedWell conferred benefits upon" Cigna (*i.e.*, services to Cigna-insured patients), and Cigna "failed to provide MedWell with remuneration for said benefits." (Compl. ¶¶ 74, 77.) There is no specification that MedWell only seeks to recover for the claims related to the twenty patients whose records were audited. To the contrary, the Complaint alleges that Cigna is "withholding *all* monies" due to MedWell for services "*unrelated*" to the twenty patients. (*Id.* ¶ 45 (emphases added).) The crux, then, of the Complaint is that Cigna owes MedWell payment for many more claims than just those related to the twenty patients. While the twenty patients' records may have triggered for Cigna's halt to payments, MedWell presumably

---

plans. Nonetheless, it is sufficient for jurisdiction if at least some of the claims for reimbursement are completely preempted. This is so because I may exercise supplemental jurisdiction over the remaining claims since Cigna is allegedly withholding payment on those claims and the preempted claims as part of the same course of conduct. *See* 28 U.S.C. § 1367(a) (providing "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *Montefiore*, 642 F.3d at 332–33 (claims forms showed that some of the claims satisfied the *Davila* test and the remaining claims that formed the basis of an unjust enrichment count came within the court's supplemental jurisdiction); *Brunswick Surgical Ctr., LLC v. CIGNA Healthcare*, Civ. No. 09-5857, 2010 WL 3283541, at *1 (D.N.J. Aug. 18, 2010) (where claims involved thirteen plans, eight of which were governed by ERISA, claims regarding the five non-ERISA plans were subject to supplemental jurisdiction).

wants to recover all monies owed. Accordingly, the plans which Cigna submitted are relevant and presumably related to claims which Cigna has paid to MedWell.

In sum, Cigna has produced sufficient evidence to show that MedWell is the type of party that could bring an ERISA claim.[4]

### 2. Type of Claim

Next, I ask whether the claim asserted by MedWell can be considered a claim for benefits under ERISA. *Progressive*, 2017 WL 4011203, at *8.[5] Such claims seek "to recover benefits due to [a beneficiary] under the terms of his plan" or "to enforce his rights under the terms of the plan." *Id.* (quoting 29 U.S.C. § 1132(a)(1)(B)). There is "a common distinction in the case law between claims involving the 'right to payment' and claims involving the 'amount of payment'—that is, on the one hand, claims that implicate coverage and benefits established by the terms of the ERISA benefit plan, and, on the other hand, claims regarding the computation of contract payments or the correct execution of such payments." *Montefiore*, 642 F.3d at 331. The former are claims for benefits under ERISA, while the latter are not. *Id.*; *accord Pascack*, 388 F.3d at 403; *see also Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp.*, 187 F.3d 1045, 1051 (9th Cir. 1999) (right to payment case when patient assigned benefits to dentist, dentist billed insurer, and insurer refused to pay (citation omitted)).

---

[4]     In extra filings, MedWell argues, for one reason or the other, that the Court cannot be sure that the plans are encompassed by the claims in this suit or that Cigna has accurately portrayed them. (*E.g.*, DE 30.) But, on this limited record and at this early stage, what I have before me are plans which Cigna attests are encompassed by this case and would appear, within their four corners, to satisfy the ERISA inquiry. So, at least now, there is no reasonable "doubt" that the plans can satisfy the ERISA inquiry. *See Carlyle*, 779 F.3d at 218. Moreover, because jurisdiction can be assessed at any time, MedWell is free to later more clearly establish as a matter of fact that no relevant plans qualify for the ERISA inquiry.

[5]     MedWell does not meaningfully contest the remaining inquiries.

This is a "right to payment" case. MedWell, on behalf of patients/beneficiaries, seeks payment from Cigna because Cigna has failed to pay altogether, even though it is obliged to under those plans. (Compl. ¶¶ 77–79.) Moreover, Cigna's denial of payment was based on Cigna's position that some services provided by MedWell were not covered (*id.* ¶¶ 40–41), and claims that implicate coverage disputes fall under § 1132 (a)(1)(B), *see CardioNet*, 751 F.3d at 177–78. Thus, MedWell seeks to "to recover benefits due to [a beneficiary] under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B); *see also Blue Cross of Cal.*, 187 F.3d at 1051. Accordingly, both subparts of prong 1 of the ERISA complete preemption analysis are satisfied.

### C. ERISA Complete Preemption Prong 2

Under the second prong, I ask whether "there is no other independent legal duty that is implicated by [Cigna's] actions." *Davila*, 542 U.S. at 210. In other words, I ask whether Cigna's liability would "derive[] entirely from the particular rights and obligations established by the benefit plans." *Id.* at 213. If a key question in the case comes down to whether claims are covered under the plan or were wrongfully denied, then liability derives from the plan. *Merling v. Horizon Blue Cross Blue Shield of N.J.*, Civ. No. 04-4026, 2009 WL 2382319, at *11 (D.N.J. July 31, 2009); *Klimowicz v. Unum Life Ins. Co. of Am.*, Civ. No. 04-2990, 2007 WL 2904195, at *4 (D.N.J. Sept. 28, 2007) (Greenaway, Jr., J.), *aff'd*, 296 F. App'x 248 (3d Cir. 2008).

Here, MedWell, in the stead of patients/beneficiaries, seeks to have Cigna pay benefits allegedly owed under those patients' plans. Cigna, for its part, contends that it has no obligation to pay because some of those claims are not covered. (Compl. ¶¶ 40–41.) Thus, to show that Cigna must pay MedWell, I will need to consult the terms of the plans to see if Cigna is wrongfully denying benefits, and a case that turns on wrongful denial of benefits satisfies the second prong. *See Merling*, 2009 WL 2382319, at *11; *Klimowicz*, 2007 WL 2904195, at *4. Further, MedWell and Cigna have no agreement with one another that could affect Cigna's obligations. *Wayne*

8

*Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, Civ. No. 06-928, 2007 WL 2416428, at *5 (D.N.J. Aug. 20, 2007) ("Because no extrinsic contract governs the amount of reimbursement to which WSC is entitled, WSC's claims are 'inextricably intertwined' with the terms of the ERISA welfare benefit plans."); *see also N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*, Civ. No. 16-1544, 2017 WL 659012, at *5 (D.N.J. Feb. 17, 2017), *report & recommendation adopted by* 2017 WL 1055957 (Mar. 20, 2017). Indeed, courts in this District find that unjust enrichment claims by a provider as assignee qualify for ERISA preemption. *E.g., Cohen v. Horizon Blue Cross Blue Shield of N.J.*, Civ. No. 15-4525, 2017 WL 685101, at *7 (D.N.J. Feb. 21, 2017); *Wayne Surgical Ctr.*, 2007 WL 2416428, at *5. Accordingly, the second prong is satisfied.

### III.  CONCLUSION

For the reasons set forth above, MedWell's motion to remand is denied.

A separate order will issue.

Dated: December 4, 2020

/s/ Kevin McNulty

------------------------------------

**Kevin McNulty**
**United States District Judge**