# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MEDWELL, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY, CIGNA HEALTHCARE OF NEW JERSEY, INC., CONNECTICUT GENERAL LIFE INSURANCE COMPANY, JOHN DOES 1–20, JANE DOES 1–20, XYZ CORPORATIONS 1–20, and ABC PARTNERSHIPS 1–20,**<br><br>Defendants. | Civ. No. 20-10627 (KM) (ESK)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

  MedWell, LLC is a healthcare practice that served patients insured by Cigna.[1] Cigna stopped paying MedWell. MedWell sued Cigna alleging state-law claims. Cigna moves to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6). (DE 46.)[2] For the foregoing reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1]  MedWell sues Cigna Corporation as well as subsidiaries and to-be-identified defendants. For simplicity, I refer to all defendants collectively as "Cigna."

[2]  Certain citations to the record are abbreviated as follows:

 Am. Compl. = Amended Complaint (DE 42)

 Ltr. = Oct. 30, 2019 Letter, Ex. A to Am. Compl. (DE 42-1)

 Mot. = Cigna's Brief in Support of its Motion to Dismiss (DE 46-1)

 Opp. = MedWell's Brief in Opposition to Cigna's Motion to Dismiss (DE 52)

 Reply = Cigna's Reply Brief (DE 56)

## I. BACKGROUND

MedWell is a healthcare practice that, for at least fifteen years, treated patients insured by Cigna. (Am. Compl. ¶¶ 16.) MedWell, however, is not a member of the participating network of providers with which Cigna has agreements. (*Id.* ¶ 15.) To the extent a patient's plan with Cigna required preauthorization for services, MedWell would obtain such preauthorization from Cigna. (*Id.* ¶ 17.) After treating patients, MedWell would submit claims to Cigna, which would review the claim and then pay MedWell for the services rendered. (*Id.* ¶¶ 18, 20.)

In 2017, Cigna had MedWell submit the records for a sampling of patients so Cigna could do an audit. (*Id.* ¶¶ 21–23.) Those records related to services which MedWell provided to patients from 2014 to 2017. (*Id.* ¶ 24.) Two years passed without word from Cigna on the audit, while MedWell continued to treat Cigna-insured patients and receive payment. (*Id.* ¶¶ 34–35.)

In August 2019, however, Cigna stopped paying any claims MedWell submitted. (*Id.* ¶ 39.) Cigna explained that its audit had identified "damages" of over $800,000. (Ltr. at 1.) Cigna's audit yielded six "findings":

1. MedWell did not consistently "bill Cigna customers their full, out-of-network cost share responsibility (i.e., copayment, deductible, and/or coinsurance) and/or balance amounts (i.e., any portion of your billed charges that exceeds the allowed amounts under plan terms)." Such a waiver of fees permits Cigna, under its agreements with insureds, to deny payment.
2. 83.3% of claims were not supported by necessary documentation.
3. 4% of claims improperly billed separate, additional services.
4. 0.6% of claims billed services which MedWell was not licensed to perform.
5. 7.4% of claims billed medically unnecessary services.
6. 5.1% of claims billed services which Cigna deemed "experimental/investigational/unproven."

(*Id.* at 1–5.) Cigna extrapolated from the findings for this audit to conclude that it was entitled to a refund of over $800,000 for *all* claims from January 1, 2016

2

to September 16, 2019. (*Id.* at 4.) Cigna also stated that, going forward, it would "deny claims pursuant to the significant issues" outlined by its letter. (*Id.*)

MedWell disputed Cigna's findings and alleges that they are "pretext" for Cigna to demand more money from providers. (Am. Compl. ¶ 54.) Cigna refused to reverse its position, stating that it would not pay any MedWell claims until MedWell provided financial records relating to collections of coinsurance and/or copays and deductibles. (*Id.* ¶¶ 71–73, 76–77.) In addition, Cigna directly communicated with patients served by MedWell instructing them not to pay MedWell due to MedWell's billing practices. (*Id.* ¶¶ 87–93.)

MedWell refused Cigna's demands and filed a lawsuit in New Jersey Superior Court. (*Id.* ¶ 94.) Cigna removed to this Court, asserting that one claim was completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, thus presenting a federal question. (DE 1, 13.) After MedWell moved to remand, I concluded that I had subject-matter jurisdiction based on complete preemption. *MedWell, LLC v. Cigna Corp.*, Civ. No. 20-10627, 2020 WL 7090745 (D.N.J. Dec. 4, 2020).

MedWell amended its complaint, alleging claims for (1) a declaratory judgment under the New Jersey Declaratory Judgments Act ("NJDJA"), N.J. Stat. Ann. § 2A:16-51 *et seq.*, (2) breach of contract, (3) breach of the implied covenant of good faith, (4) quantum meruit, (5) unjust enrichment, (6) promissory estoppel, (7) equitable estoppel, (8) tortious interference with contract, (9) tortious interference with prospective advantage, and (10) civil conspiracy. (Am. Compl. ¶¶ 95–147.) Cigna moves to dismiss. (Mot.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III. DISCUSSION

Cigna moves to dismiss on the grounds that (1) MedWell's claims are preempted by ERISA to the extent patients treated by MedWell had ERISA-regulated plans, and (2) each claim is insufficiently alleged. (Mot. at 1–2.) As Cigna admits, the Amended Complaint does not allege that *all* patients served by MedWell had ERISA-regulated plans. (Reply at 1–2.) Thus, Cigna's preemption argument cannot dispose of any claim in its entirety. So I address the sufficiency of each claim and then, as to the surviving claims, address whether preemption would narrow them.

### A. Declaratory Judgment

Count 1 is a claim under the NJDJA asking the Court to declare MedWell's rights vis-à-vis Cigna—*i.e.*, to determine what contractual or quasi-contractual obligations Cigna owes to MedWell. (Am. Compl. ¶ 98.) The NJDJA permits "[a]ll courts of record in this state . . . to declare rights, status and other legal relations." N.J. Stat. Ann. § 2A:16-52. But, as MedWell concedes (Opp. at 36), the federal Declaratory Judgment Act, 28 U.S.C. § 2201, applies in federal court. *E.g.*, *Crest Furniture, Inc. v. Ashley Homestores, Ltd.*, Civ. No. 20-1383, 2020 WL 6375808, at *12 (D.N.J. Oct. 30, 2020) (citing *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996)). That Act is not a standalone source of rights, but a procedural vehicle for litigants to seek a declaration of their rights under some other law. *See CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013); *In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 740 (D.N.J. 2016). Thus, Count 1

4

requires dismissal as a standalone claim, but MedWell may seek a declaratory judgment as a remedy in connection with one or more of its substantive claims.

So, while it may make little practical difference, Cigna's motion to dismiss Count 1 will be GRANTED.

**B. Breach of Contract**

MedWell alleges that the parties' "course of conduct" created a contract under which Cigna would pay MedWell for services provided to Cigna-insured patients, and that Cigna breached that contract by failing to pay. (Am. Compl., Count 2.) Also as the basis for a contract claim, MedWell alleges that, during its fifteen-year relationship with Cigna, it would obtain preauthorization from Cigna before performing services in some cases. (*Id.* ¶ 17.)

A breach of contract claim requires a plaintiff plead that a valid contract existed which a defendant breached. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citations omitted). A valid contract can exist "in circumstances in which the agreement and promise have not been verbally expressed. The agreement is rather inferred from the conduct of the parties." *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004) (citation omitted).

Determining whether an implied contract exists is a factual question. *Troy v. Rutgers*, 774 A.2d 476, 483 (N.J. 2001). At the motion to dismiss stage, courts have held that similar allegations—*i.e.,* that an out-of-network provider and an insurer regularly dealt with each other and the provider would obtain preauthorization—plausibly set forth an implied contract. *E.g., Small v. Oxford Health Ins., Inc.*, Civ. No. 18-13120, 2019 WL 851355, at *5 (D.N.J. Feb. 21, 2019); *Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.*, Civ. No. 18-10036, 2018 WL 6445593, at *5 (D.N.J. Dec. 10, 2018); *E. Coast Advanced Plastic Surgery v. Aetna, Inc.*, Civ. No. 17-13676, 2018 WL 3062907, at *3 (D.N.J. June 21, 2018). Those courts reasoned that preauthorization from the insurer plausibly communicates to the provider that the insurer will reimburse the provider for the costs of the service. *Id.* When the insurer later refuses to do so, the insurer has breached that implied promise. *Id.*

I agree. The allegations that MedWell had a regular billing relationship with Cigna lasting fifteen years, coupled with a pattern of preauthorization, takes the Amended Complaint beyond "[m]erely claiming that an implied contract arose 'from the course of conduct.'" *Longenecker-Wells v. Benecard Servs. Inc.*, 658 F. App'x 659, 663 (3d Cir. 2016) (applying Pennsylvania law); *cf. Ctr. for Special Procs. v. Conn. Gen. Life Ins. Co.*, Civ. No. 09-6566, 2010 WL 5068164, at *6 (D.N.J. Dec. 6, 2010) (finding insufficient an allegation that there was merely a course of conduct). True, at least one court has held that allegations regarding preauthorization are insufficient if they "do[] not describe the preauthorization's contents whatsoever, including, for example, the extent and scope of covered treatment." *Haghighi v. Horizon Blue Cross Blue Shield of N.J.*, Civ. No. 19-20483, 2020 WL 5105234, at *5 (D.N.J. Aug. 31, 2020). But the majority view, conforming with, if not bound by, New Jersey Supreme Court precedent, reasons that the precise terms of the obligation are factual matters to be fleshed out in discovery. *E.g.*, *Comprehensive Spine Care*, 2018 WL 6445593, at *5. Allegations about preauthorization allow an inference of the mutuality of obligation necessary for contract formation, and that is sufficient to survive a motion to dismiss. *See id.*

Cigna's motion to dismiss Count 2 will therefore be DENIED.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

MedWell alleges that Cigna breached not only the substantive terms (we cannot call them "express" terms) of the implied contract, but also the implied covenant of good faith and fair dealing that is a part of every contract. (Am. Compl., Count 3.) New Jersey case law has long held that such a covenant is implied in law. *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). An implied-covenant claim must allege more than a simple breach of contract; it requires some bad faith action by which the other party's

6

contractual rights are defeated. *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, ---F. Supp. 3d ----, ----, Civ. No. 18-10675, 2021 WL 303030, at *6 (D.N.J. Jan. 29, 2021). MedWell has made allegations that go beyond a simple breach of contract and instead suggest bad faith. I offer two examples.

First, MedWell alleges that the "findings" which Cigna proffered to support its denial of payment were not made in good faith. Rather, for example, Cigna initially requested only certain documentation, but then "found" that MedWell's billing was unsubstantiated because it lacked the very documentation which Cigna failed to request. (Am. Compl. ¶¶ 70–71.) Further, when MedWell offered to provide the missing documentation, Cigna refused to reverse its position. (*Id.* ¶¶ 72–73.) Cigna's Kafkaesque approach to this audit, at least in MedWell's version, constitutes a sufficient allegation that its conduct lacked "any legitimate purpose." *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006).

Second, Cigna extrapolated from a small-sample audit to justify denying all payment going forward. That inferential leap (again, accepting MedWell's version of the facts) constitutes a plausible allegation that Cigna used the audit to extort from MedWell payments in excess of its contractual entitlements. (Am. Compl. ¶¶ 80–81.) What is more, MedWell alleges that Cigna uses this tactic often with providers. (*Id.* ¶¶ 84–85.) Thus, MedWell's allegations suggest "ill motives" because Cigna's actions here were part of a larger scheme to extract money from providers. *Elliott & Frantz*, 457 F.3d at 329.

Accordingly, "[t]his is not a simple 'defendant failed to pay' allegation. Rather, this allegation shows that [Cigna] had the design to not only breach the contract, but to do so in a way to strongarm" MedWell into paying what it did not owe, or not to receive what it was owed. *Durr*, 2021 WL 303030, at *6. For those reasons, Cigna's motion to dismiss Count 3 will be DENIED.

### D. Quantum Meruit and Unjust Enrichment

MedWell alleges claims for quantum meruit and unjust enrichment. (Am. Compl., Counts 4 & 5.) Quantum meruit requires "(1) the performance of

7

services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Starkey, Kelly, Blaney & White v. Estate of Nicolaysen*, 796 A.2d 238, 242–43 (N.J. 2002) (citation omitted). Unjust enrichment similarly requires that the defendant "received a benefit and that retention of that benefit without payment would be unjust." *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016) (citation omitted). Without venturing into the differences between the two, suffice to say that "[r]ecovery under both of these doctrines requires a determination that defendant has benefitted from plaintiff's performance." *Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 310 (N.J. Super. Ct. App. Div. 2017). Cigna argues that the benefit in this case, *i.e.,* medical services by MedWell, inures only to the patients treated, not to Cigna. (Mot. at 19–20.)

As I recently explained, although some courts in this District had accepted that argument, Third Circuit precedent now forecloses it. *MHA, LLC v. Amerigroup Corp.*, Civ. No. 18-16042, 2021 WL 1976787, at *9 (D.N.J. May 17, 2021). In *Plastic Surgery Center, P.A. v. Aetna Life Insurance Co.*, the Court explained that "where a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se,* but rather the discharge of the obligation the insurer owes to its insured." 967 F.3d 218, 240 (3d Cir. 2020) (footnote omitted). The Court noted that some courts in this District had disagreed, but found that they had relied on inapposite precedent and overlooked New Jersey Supreme Court cases allowing unjust enrichment claims against insurers. *Id.* at 240 n.26. I am bound by *Plastic Surgery Center*, so I cannot accept Cigna's argument, which relies on cases predating it.

Cigna's motion to dismiss Counts 4 and 5 will be DENIED.

## E. Promissory Estoppel

MedWell alleges a claim for promissory estoppel. (Am. Compl., Count 6.) Promissory estoppel requires, among other things, "a clear and definite

8

promise." *Toll Bros., Inc. v. Bd. of Chosen Freeholders*, 944 A.2d 1, 19 (N.J. 2008). Cigna argues that this claim fails because (1) MedWell does not allege a clear and definite promise, and (2) a valid contract, which MedWell alleges existed, precludes a promissory estoppel claim. (Mot. at 21–22.)

Neither argument is persuasive. On the first, courts have held that a preauthorization can represent a clear and definite promise. *Comprehensive Spine Care*, 2018 WL 6445593, at *5; *E. Coast*, 2018 WL 3062907, at *3. On the second, Federal Rule of Civil Procedure 8 permits pleading alternative or inconsistent claims. Fed. Riv. Civ. P. 8(d)(2), (3). As a result, a party may plead quasi-contract theories along with a breach of contract claim, in case the court later finds that no contract existed. *Gap Props., LLC v. Cairo*, Civ. No. 19-20117, 2020 WL 7183509, at *4 (D.N.J. Sept. 17, 2020). Thus, Cigna presents no reason to dismiss the promissory estoppel claim at this early stage of the litigation.

Cigna's motion to dismiss Count 6 will be DENIED.

### F. Equitable Estoppel

MedWell alleges a claim for equitable estoppel. (Am. Compl., Count 7.) Equitable estoppel "is a doctrine applied . . . for the purpose of precluding a party from asserting rights which might perhaps have otherwise existed as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse." *Northfield Ins. Co. v. Mt. Hawley Ins. Co.*, 184 A.3d 517, 523 (N.J. Super. Ct. App. Div. 2018) (cleaned up). It is not recognized as an independent cause of action. *Gant v. Ragone*, Civ. No. 20-1727, 2020 WL 6797125, at *3 (D.N.J. Nov. 19, 2020) (citing *Bava v. Hamilton Farm Golf Club*, Civ. No. 08-5473, 2009 WL 2778108, at *3 n.5 (D.N.J. Aug. 28, 2009)); *accord Carlson v. Arnot-Ogden Memorial Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (applying Pennsylvania law). Rather, "equitable estoppel is generally invoked to . . . bar a party from asserting certain legal positions in litigation . . . , where doing so would be unfair." *Bava*, 2009 WL 2778108, at *3 n.5. Accordingly, MedWell cannot state a separate

9

claim for equitable estoppel, even if equitable estoppel concepts should prove applicable at some stage of the case.

Cigna's motion to dismiss Count 7 will be GRANTED.

### G. Tortious Interference Claims

MedWell alleges claims for tortious interference with contract and tortious interference with prospective economic advantage. (Am. Compl., Counts 8 & 9.) Those torts require "(1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages." *Vosough v. Kierce*, 97 A.3d 1150, 1159 (N.J. Super. Ct. App. Div. 2014) (citation omitted).[3]

These claims falter because they do not adequately allege the loss of a contract or prospective gain and resulting damages. A plaintiff must allege that a defendant's interference caused the plaintiff to lose the economic benefits of the contract or prospective business. *Avaya, Inc. RP v. Telecom Labs, Inc.*, 838 F.3d 354, 383 (3d Cir. 2016). In other words, the plaintiff must allege a loss or breach of the contract or prospective contract. *loanDepot.com v. CrossCountry Mortg., Inc.*, 399 F. Supp. 3d 226, 235 (D.N.J. 2019). Here, the Amended Complaint takes care to *not* allege that MedWell has lost patients. Instead, the Amended Complaint makes it clear that MedWell brings this action to avoid losing or turning away patients. (Am. Compl. ¶ 94.) Yet, a tortious interference claim lies when a plaintiff has experienced a loss of a contract or business and resulting damages. It does not appear, at least based on this pleading, that such a loss has materialized yet to support a tortious interference claim.[4]

---

[3]  For tortious interference with contract, the first element involves showing an actual contract, while tortious interference with prospective advantage involves showing "a *prospective* contract or other economic benefit." *Interstate Realty Co. v. Sears, Roebuck & Co.*, Civ. No. 06-5997, 2009 WL 1286209, at *10 (D.N.J. Apr. 27, 2009) (citation omitted).

[4]  The Amended Complaint does not clearly allege that Cigna's interference caused any patients who have already been treated to withhold payment from MedWell, in

Cigna's motion to dismiss Counts 8 and 9 will be GRANTED.

### H. Civil Conspiracy

MedWell alleges that the four Cigna entities named as defendants engaged in a civil conspiracy to commit the unlawful conduct here. (Am. Compl., Count 10.) Civil conspiracy requires a plaintiff to allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (citation omitted).

MedWell simply alleges that the four Cigna entities "agreed with one another, and acted in concert." (Am. Compl. ¶ 145.) Such conclusory allegations are insufficient. *Ojo v. Milrose 179 Harrison, LLC*, Civ. No. 20-949, 2021 WL 822788, at *12 (D.N.J. Mar. 4, 2021). Further, MedWell alleges that Cigna Corp. owns the remaining three defendant-entities as subsidiaries. (Am. Compl. ¶ 8.) New Jersey generally does not recognize that corporations can conspire with themselves or with their agents, so it is not clear that New Jersey law recognizes a conspiracy between parents and subsidiaries. *Ojo*, 2021 WL 822788, at *12.

For those reasons, Cigna's motion to dismiss Count 10 will be GRANTED.

### I. Preemption

Having narrowed the claims, I turn to Cigna's preemption argument. Cigna argues that ERISA preempts MedWell's remaining claims, all asserted under state law, *to the extent* the patients MedWell served had ERISA-governed

---

other words, that MedWell lost a current, paying customer. Rather, the pleading stops just short and alleges that Cigna directed patients not to pay MedWell and MedWell *may* be forced to initiate collections actions against patients. (Am. Compl. ¶¶ 91, 94.) Thus, it is still speculative that Cigna's actions have cost MedWell money owed from patients. That might be alleged, but it has not been.

plans. As Cigna candidly admits, MedWell seeks to recover payment for services to unspecified patients, so it is unclear from the face of the Amended Complaint which or how many patients had ERISA-governed plans, a prerequisite to any ERISA preemption argument. (Reply at 1.) At this stage, dismissal based on preemption "is appropriate . . . only when preemption is manifest in the complaint itself." *Lupian v. Joseph Cory Holdings Co.*, 905 F.3d 127, 130–31 (3d Cir. 2018) (quotation marks and citation omitted). When preemption would only excise an undefined portion or sub-theory of a claim, I have discretion to defer taking up preemption. *MHA*, 2021 WL 1976787, at *11. I will nonetheless decide preemption in this case because (1) Third Circuit precedent makes clear enough how preemption applies to ERISA claims on the pleadings, and (2) the removal of ERISA-governed plans from this case would narrow the issues and discovery.

ERISA "provide[s] a uniform regulatory regime over employee benefit plans," including health insurance plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To that end, ERISA contains "a broad express preemption provision, which 'supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Plastic Surgery Ctr.*, 967 F.3d at 226 (quoting 29 U.S.C. § 1144(a)). To flesh out "relate to," the Supreme Court and Third Circuit have devised tests, subtests, and even sub-sub-tests. *Id.* at 226, 230, 235. Cigna only focuses on one, and because preemption is an affirmative defense (Mot. at 10; Reply at 2–3), I similarly limit my inquiry. *See In re Frescati Shipping Co.*, 886 F.3d 291, 313 (3d Cir. 2018) (to preserve an affirmative defense, a party must "actually" raise it, such as by providing "specific citation" or "a description of the nature of the defense"), *aff'd sub nom. CITGO Asphalt Refining Co. v. Frescati Shipping Co.*, 140 S. Ct. 1081 (2020).

Under the test cited by Cigna, ERISA preempts state common-law claims "that involve construction of the plan or require interpreting the plan's terms." *Plastic Surgery Ctr.*, 967 F.3d at 230 (cleaned up). But claims that happen to require "only a cursory examination of the plan" are not preempted. *Id.* at 233

12

(citation omitted). In *Plastic Surgery Center*, the Third Circuit applied this test to similar claims by an out-of-network provider against an insurer. The provider contacted the insurer to confirm that it would cover two procedures for patients. *Id.* at 223–24. The insurer orally agreed to pay "a reasonable amount for those services according to the terms of the [patient's] Plan" or to pay at "highest in[-]network level." *Id.* at 224. After the procedures, the insurer paid a fraction of the cost. *Id.* The provider brought claims under New Jersey law for breach of contract, promissory estoppel, and unjust enrichment. *Id.*

I discuss the Third Circuit's preemption holding as to each claim and apply it to the corresponding claims in this case.

### 1. Breach of Contract, Promissory Estoppel, and Breach of the Implied Covenant of Good Faith

*Plastic Surgery Center* held that the breach of contract and promissory estoppel claims were not preempted. The Court explained that those claims arose out of a relationship between the provider and the insurer and were thus sufficiently independent of any plan the patient had. *Id.* at 231. Indeed, the claims "arose precisely because there was no coverage under the plans for services performed by an out-of-network provider." *Id.* The Court further explained that the fact that the provider and insurer agreed to payment rates based on the patient's plans did not trigger preemption. *Id.* at 233. This was so because "determinations of in-network payment rates" would not "require careful study of the intricacies of the plans" but simply "reviewing the fee schedule attached to [the insurer's] in-network provider agreements." *Id.* at 233.

Under that reasoning, MedWell's breach of contract and promissory estoppel claims are not preempted. At their simplest, those claims allege that MedWell provided services which Cigna, despite indicating that it would do so, did not pay for. As in *Plastic Surgery Center*, these claims would not require an intricate look at the patients' Cigna plans, because the services were provided

off-plan. At most, the finder of fact would need to consult a schedule of in-network rates as a guide.

But this case, Cigna argues, is different. Cigna's basis for denying payment was that MedWell did not charge Cigna-insured patients their full cost-share responsibility, and that waiver of fees violates the plan agreements, which then give Cigna the right to withhold payment. (Mot. at 10 (citing Ltr. at 2).) As a result, Cigna reasons, deciding whether Cigna had the right to withhold payment from MedWell requires interpreting whether MedWell violated the fee-waiver provision of the plan agreements. (*Id.*)

I agree that this claim is not a straight in-network claim as between insurer and insured, based on the plan or policy of insurance. Rather, it is an independent claim as between the provider and the insurer. Schematically, Contract A is between X and Y, but Y is using the provisions of Contract B, between Y and Z, as a defense. The alleged contractual arrangement here is between MedWell and Cigna, and that contract was allegedly created when Cigna represented or implied that it would cover MedWell's services. (*See* Section III.B, III.E, *supra*.) Whether such a contract incorporated the terms of Cigna's agreements with insured patients or entailed that MedWell be treated like an in-network provider is at best an issue of fact requiring exploration.[5] As *Plastic Surgery Center* explained, my focus here is on the mutual obligations of MedWell and Cigna, as alleged in the pleading, and those allegations do not show on their face that MedWell was bound by the fee-waiver provisions of the plans.[6]

---

[5]     Cigna argues that, to the extent MedWell's claims are based on preauthorization, they relate to ERISA plans because MedWell sought preauthorization precisely because plans required it. (Mot. at 12.) But the same was essentially true in *Plastic Surgery Center*, and the Court rejected that argument. Rather, the Court explained, the plan placed a duty on the patient to seek preauthorization, and because the provider was not a party to the plan, it had no duty to seek preauthorization. 967 F.3d at 234–35.

[6]     This is not to say that Cigna cannot resurrect this argument on a fuller record. In an implied contract case like this one, the precise terms of the parties' agreement

*Plastic Surgery Center* did not address whether its holding would apply to a breach of the implied covenant of good faith claim. Likewise, Cigna does not make specific arguments as to that claim in this case. I see no reason why the breach of the implied covenant claim should be preempted. That claim relies on allegations that findings in Cigna's audit letter, which do not reference plans (*e.g.*, claims were lacking documentation), were made in bad faith. Because not all of Cigna's reasons for denying payment referenced the plans, and MedWell alleges that all were in bad faith, the breach of the implied covenant claim would not require consulting Cigna plans.

### 2. Unjust Enrichment and Quantum Meruit

The *Plastic Surgery Center* Court reached a different conclusion as to an unjust enrichment claim and held that it was preempted. The Court reasoned that the benefit conferred by the provider on the insurer is "the discharge of the obligation the insurer owes to its insured," and that obligation "is none other than the insurer's duty to its insured *under the terms of the ERISA plan*." 967 F.3d at 241. In other words, to find that the provider conferred a cognizable benefit, the court must find that an ERISA plan exists and applies. *Id.*

So too here. As I explained, MedWell can state an unjust enrichment claim only because, under *Plastic Surgery Center*, it conferred the benefit of discharging Cigna's obligations (which arise under ERISA) to its insureds. (Section III.D, *supra*.) So what *Plastic Surgery Center* gives, it also takes away. Because the benefit conferred was a discharge of duties under ERISA plans, the unjust enrichment claim is preempted.

---

require factual development. *Troy*, 774 A.2d at 483. With more facts, Cigna may be able to show that MedWell impliedly agreed to abide by Cigna's policies, including the fee-waiver provisions in the plan agreements. Indeed, the insurer has some equities on its side here; such provisions have salutary purposes, and it may seem anomalous that a provider should be able to circumvent them and obtain an advantage by virtue of *not* being within network. At any rate, should these plan provisions be found to be part of the implied contract, the claim might well be preempted.

The Third Circuit did not decide whether this reasoning applies equally to quantum meruit. The Court noted that "it is unclear how the analysis would bear out" because New Jersey law "does not require a showing of a benefit conferred to establish a quantum meruit claim." *Id.* at 241 n.27. And it is true, as the Court observed, that the elements of quantum meruit are sometimes expressed not to require a benefit conferred but services rendered. *Id.* (citing *Starkey*, 796 A.2d at 242–43).

Still, New Jersey courts have treated the two as parallel, and generally have held that quantum meruit requires a benefit conferred, even if that benefit may take the form of services. *See Woodlands Cmty. Ass'n*, 162 A.3d at 310 (both unjust enrichment and quantum meruit "require[] a determination that defendant has benefitted from plaintiff's performance"); *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 285 (N.J. 1992) ("[C]ourts have allowed quasi-contractual recovery for services rendered when a party confers a benefit with a reasonable expectation of payment . . . . That type of quasi-contractual recovery is known as quantum meruit . . . ."); *see also* N.J. Model Civ. Jury Charges 4.11 (listing as an element of quantum meruit that "plaintiff conferred a benefit on defendant"). The fact remains that the benefit, *as between the provider and the insurer,* consists of a discharge of duties under ERISA plans; neither entity provided compensable medical services, as such, to the other. I thus hold that the quantum meruit claim, like the unjust enrichment claim, is preempted. *See Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 386 (5th Cir.) (unjust enrichment and quantum meruit claims preempted for same reason), *reh'g en banc granted*, 678 F.3d 940 (5th Cir.), *opinion reinstated*, 698 F.3d 229 (5th Cir. 2012) (en banc).

* * *

Thus, to the extent MedWell seeks recovery for services to patients with ERISA-governed plans, MedWell's unjust enrichment and quantum meruit claims are preempted.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. Counts 1, 7, 8, 9, and 10 are dismissed in their entirety. Counts 4 and 5 are dismissed to the extent MedWell seeks recovery for services to patients with ERISA-governed plans.

A separate order will issue.

Dated: May 19, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**