UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MEDWELL, LLC<br><br>Plaintiff,<br><br>v.<br><br>CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY, CIGNA HEALTHCARE OF NEW JERSEY, INC., CONNECTICUT GENERAL LIFE INSURANCE COMPANY, JOHN DOES AND JANE DOES 1-20, XYZ CORPORATIONS, and ABC PARTNERSHIPS 1-20<br><br>Defendants. | Civil Action No. 20-10627 (JXN) (ESK)<br><br>**OPINION** |

**NEALS**, District Judge

This matter comes before the Court on the motion filed by Defendants Cigna Corporation, Cigna Health and Life Insurance Company, Cigna Healthcare of New Jersey, Inc., and Connecticut Life Insurance Company (collectively "Defendants") to dismiss Counts Six and Seven of Plaintiff MedWell LLC's ("Plaintiff") Second Amended Complaint. [ECF No. 80.] Plaintiff opposed the motion [ECF No. 83] and Defendants replied in further support [ECF No. 84]. The Court has considered the submission of the parties and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons stated herein, Defendants' motion to dismiss [ECF No. 80] is **GRANTED**.

**I.    BACKGROUND**

Defendants are affiliated entities of a health services company that provides medical and other healthcare coverage to insured patients. Second Am. Compl., ECF No. 79 ¶¶ 8-11. Plaintiff is a medical,

---

[1] Jurisdiction is proper under 28 U.S.C. § 1331 and venue is proper under 28 U.S.C. § 1391.

chiropractic, and physical therapy practice that provides healthcare services to the public. *Id.* ¶ 2. Plaintiff does not participate in the coverage network administered by Defendants, but Plaintiff has treated patients who are insured by Defendants and submitted claims for out-of-network coverage. *Id.* ¶¶ 15-16, 18. When requested, Plaintiff has sought pre-authorization and furnished supporting documents to obtain reimbursement from Defendants. *Id.* ¶¶ 17-18.

According to Plaintiff, Defendants reimbursed patient treatment until late 2019, when Defendants stopped processing claims from Plaintiff and demanded nearly $850,000 in payments. *Id.* ¶¶ 20, 39, 45. Plaintiff alleges that that Defendants offered pretextual reasons for this decision, which Defendants attributed to an early 2017 audit that purportedly highlighted repeated failures to meet out-of-network coverage conditions. *Id.* ¶¶ 52-86. Plaintiff further alleges that Defendants communicated with patients to inform them of mismatches between claims and supporting documents and to encourage them to cease all payments to Plaintiff. *Id.* ¶¶ 89, 91. According to Plaintiff, Defendants knew that their reasons were baseless but were motivated by the prospect of additional revenue. *Id.* ¶¶ 54, 85-86.

In the First Amended Complaint, Plaintiff sued Defendants for declaratory judgment, breach of contract, breach of the implied covenant of good faith, quantum meruit, unjust enrichment, promissory estoppel, equitable estoppel, tortious interference with contract, tortious interference with prospective economic advantage, and civil conspiracy. First Am. Compl., ECF No. 42 ¶¶ 95-147. The Court dismissed the claims for declaratory judgment, equitable estoppel, tortious interference, and civil conspiracy. ECF No. 61 at 4-11. The Court also dismissed the quantum meruit and unjust enrichment claims to the extent ERISA preemption applied. *Id.* at 15-16. With respect to tortious interference, the Court found that the claims "d[id] not adequately allege the loss of a contract or prospective gain and resulting damages." *Id.* at 10. Specifically, the Court found that Plaintiff did not allege that it had "lost patients" or that Defendants had caused patients to "withhold payment" for treatment. *Id.* at 10-11 & n.4.

In the Second Amended Complaint, Plaintiff reasserted claims for tortious interference with contract and tortious interference with prospective economic advantage. Second Am. Compl., ECF No. 79 ¶¶ 129-38. To this end, Plaintiff offered the new allegations that it lost patients and money because it could not collect payments, which patients withheld due to Defendants' conduct. *Id.* ¶¶ 94-96, 98. Plaintiff also modified the existing allegations to clarify that Defendants' conduct was ongoing and impacted both potential services and current patients. *Id.* ¶¶ 86, 90-91, 97, 133-34. Thereafter, Defendants moved to dismiss the tortious interference claims. ECF No. 80. Plaintiff opposed the motion, and Defendants replied. ECF Nos. 83, 84. The motion is now ripe for the Court's consideration.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering the motion, the court assumes the truth of the facts alleged and draws all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). However, the allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* The complaint will only survive dismissal if it provides factual allegations that support a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Under this standard, the Third Circuit requires a three-part inquiry: (1) the court must recite the elements that are required under the relevant causes of action; (2) the court must ascertain the allegations in the complaint that are conclusory and unqualified for an assumption of truth; and (3) the court must assume the truth of the factual allegations in the complaint and assess the plausibility of the claims for relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Ultimately, the complaint "must

do more than allege the plaintiff's entitlement to relief"—it "has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

### III. DISCUSSION

Defendants move to dismiss Plaintiff's claims for tortious interference with contract (Count Six) and tortious interference with prospective economic advantage (Count Seven) in the Second Amended Complaint for failure to state a claim upon which relief can be granted. ECF No. 80-1 at 6. Defendants argue that Plaintiff fails to plead tortious interference because Plaintiff does not adequately allege the existence of a contract or the identity of lost patients. *Id.* at 12-16. Defendants also argue that the claims should be dismissed with prejudice because Plaintiff has already been afforded the opportunity to cure the deficiencies and does not possess the requisite factual information. *Id.* at 16-17. The Court addresses each argument in turn.

### A. Whether Plaintiff Fails to Plead Tortious Interference

Tortious interference involves four elements: "(1) the existence of the contract or the prospective economic relationship; (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages." *Velop, Inc. v. Kaplan*, 693 A.2d 917, 926 (N.J. Super. Ct. App. Div. 1997) (parenthesis omitted); *see also Vosough v. Kierce*, 97 A.3d 1150, 1159 (N.J. Super. Ct. App. Div. 2014). For tortious interference with contract, the first element requires allegations that show an enforceable contract. *Dello Russo v. Nagel*, 817 A.2d 426, 434 (N.J. Super. Ct. App. Div. 2003). However, for tortious interference with prospective economic advantage, the first element only requires allegations that show a reasonable expectation of economic advantage. *Weil v. Express Container Corp.*, 824 A.2d 174, 183 (N.J. Super. Ct. App. Div. 2003); *see also Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989). Nevertheless, "the claimed loss of . . . unknown customers cannot, standing alone, state a claim for tortious interference

with prospective business relations." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 494 (D.N.J. 1998) (citations omitted).

Here, Plaintiff fails to plead tortious interference with contract because Plaintiff does not adequately allege the existence of a contract. Likewise, Plaintiff fails to plead tortious interference with prospective economic advantage because Plaintiff does not adequately allege a reasonable expectation of economic advantage, but merely claims the loss of unknown patients. Overall, Plaintiff adds but four new allegations, and the assertions therein are inadequate. Similarly, the allegations modified by Plaintiff remain inadequate to state a claim for relief.

i. Whether Plaintiff Adequately Alleges the Existence of a Contract

Plaintiff does not dispute that it must adequately allege an existing contract in order to plead tortious interference with contract. ECF No. 83 at 11. Indeed, Plaintiff cites eight allegations that purportedly show a contract with patients. *Id.* at 11-13. However, these allegations merely show that Plaintiff has provided healthcare to patients (Second Am. Compl., ECF No. 79 ¶¶ 2, 16); that Defendants have communicated to Plaintiff and patients that Plaintiff is not entitled to payment (*id.* ¶¶ 91-92); that Defendants' conduct has undermined Plaintiff's relationship with patients and Plaintiff's ability to collect payments (*id.* ¶¶ 93, 97); and that Plaintiff has been unable to collect from patients, who have withheld payments (*id.* ¶¶ 94-95). Six of these allegations were previously available to the Court (*see id.* ¶¶ 2, 16, 91-93, 97), which found that tortious interference with contract had not been pled. ECF No. 61 at 10-11; *see also* First Am. Compl., ECF No. 42 ¶¶ 2, 16, 91-94.[2] The remaining two allegations imply that Plaintiff has anticipated payment from patients (*see* Second Am. Compl., ECF No.

---

[2] Although the allegations were modified to clarify that Defendants' conduct is ongoing and that it impacts potential services, these modifications do not show an existing contract between Plaintiff and patients. *Compare* First Am. Compl., ECF No. 42 ¶¶ 90-92, 94, *with* Second Am. Compl., ECF No. 79 ¶¶ 90-92, 97. Likewise, the modification that references a "financial obligation" from patients to Plaintiff is conclusory, as it does not allege any facts that show an existing contract. *Compare* First Am. Compl., ECF No. 42 ¶ 91, *with* Second Am. Compl., ECF No. 79 ¶ 91. Plainly, "Plaintiff has failed to identify valid relevant contracts with reasonable specificity." *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2015 WL 1969380, at *7 (D.N.J. Apr. 29, 2015) (finding that allegations referencing "'agreements' with various entities" did "not provide adequate specifics concerning these agreements").

79 ¶¶ 94-95), but these assertions do not "explicitly describe" any contract or the terms thereof. *loanDepot.com v. CrossCountry Mortgage, Inc.*, 399 F. Supp. 3d 226, 236 (D.N.J. 2019); *see also Commerce Ins. Servs., Inc. v. Szczurek*, 2006 WL 8457151, at *8 (D.N.J. Jan. 6, 2006).[3] Since Plaintiff does not adequately allege an existing contract, Plaintiff fails to plead tortious interference with contract.

Additionally, Plaintiff does not adequately allege the loss of any contract. Plaintiff cites four allegations that purportedly show the loss of a contract with patients. ECF No. 83 at 15-16. These allegations show that Defendants' conduct has jeopardized Plaintiff's relationship with patients, undermined the ability to collect on claims, caused patients to withhold payments, and forced Plaintiff to stop payment collections. Second Am. Compl., ECF No. 79 ¶¶ 93-96. But these allegations, which do not identify any claims, collections, or times, "are too vague to set forth a specific breach of [a] contract." *loanDepot*, 399 F. Supp. 3d at 237. Thus, Plaintiff fails to plead tortious interference with contract, even if Plaintiff adequately alleges an existing contract.

### ii. Whether Plaintiff Adequately Alleges the Identity of Lost Patients

Plaintiff does not dispute that it must adequately allege the loss of a reasonable expectation of economic advantage in order to plead tortious interference with prospective economic advantage. ECF No. 83 at 13-14. Instead, Plaintiff disputes that it must identify lost patients and argues that the allegations "need only provide facts demonstrating that [it] was in 'pursuit of business.'" *Id.* at 15, 20-22. Plaintiff cites fourteen allegations that purportedly fit the bill. *Id.* at 15-16. As detailed above, these allegations suggest that Defendants' conduct has caused Plaintiff to suffer financial difficulty and lose longstanding "business relationships" with patients, but "without identifying a single existing or

---

[3] In *loanDepot* and *Szczurek*, the plaintiffs alleged that they had employment relationships with individuals and suggested that they expected non-solicitation or confidentiality, but the plaintiffs did not identify or explicitly describe contracts whose terms memorialized these expectations. 399 F. Supp. 3d at 236-37; 2006 WL 8457151, at *2-3. Here too, Plaintiff alleges that it has business relationships with patients and implies that it has anticipated payment, but Plaintiff does identify or explicitly describe any contract whose terms memorialize this anticipation.

prospective" patient. *Szczurek*, 2006 WL 8457151, at *9 (D.N.J. Jan. 6, 2006) (citations omitted).[4] And "mere allegation of lost business does not suffice" to establish the loss of a reasonable expectation of economic advantage. *Eli Lilly*, 23 F. Supp. 2d at 494 (citations omitted).[5] Although four of the allegations also suggest that patients have withheld payments from Plaintiff and that Plaintiff cannot collect payments from patients (*see* Second Am. Compl., ECF No. 79 ¶¶ 94-96, 98), Plaintiff "fails to identify a single, specific" patient. *Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 Fed. Appx. 787, 790 (3d Cir. 2009).[6] As to the remaining ten allegations (*see* Second Am. Compl., ECF No. 79 ¶¶ 2, 16, 87-93, 97), the Court previously found that tortious interference with prospective economic advantage had not been pled. ECF No. 61 at 10-11; *see also* First Am. Compl., ECF No. 42 ¶¶ 2, 16, 87-94.

*Novartis Pharmaceuticals Corp. v. Bausch & Lomb, Inc.* is instructive. 2008 WL 4911868 (D.N.J. Nov. 13, 2008). In that case, the defendant stopped reimbursing the plaintiff for promotion of the defendant's medical product to plaintiff's customers "based on an alleged failure to meet call volume and sales goals." *Id.* at *1. In connection with the decision, the defendant requested an audit from the plaintiff and communicated with patients. *Id.* at *1-2. In response, the plaintiff sued the defendant for tortious interference with prospective economic advantage. *Id.* at *2. Ultimately, the Court found that

---

[4] In *Szczurek*, the plaintiff alleged that one prior employee solicited business from a specific customer and that another prior employee solicited business from customers in general. 2006 WL 8457151, at *2-3, 5. The Court found that the plaintiff pled tortious interference with prospective economic advantage for the former prior employee, but not for the latter prior employee. *Id.* at *5, 8-9. Here too, Plaintiff alleges that Defendants impeded business from patients in general, not from specific patients. Thus, Plaintiff fails to plead tortious interference with prospective economic advantage.

[5] In *Eli Lilly*, the plaintiff pharmaceutical company did not allege business relationships with specific manufacturers that were meant to produce a drug product. 23 F. Supp. 2d at 494. Here too, Plaintiff does not allege business relationships with specific patients who were meant to produce payment.

[6] In *American Millennium*, the Third Circuit affirmed the decision of the Court. 332 Fed. Appx. at 790. In the decision, the Court held that tortious interference with prospective economic advantage required "the likelihood of a *particular* contract . . . or a *specific* business relationship" being "actualized," and that it was inadequate for the plaintiff auto insurer to allege that it lost taxicab customers due to the defendant auto insurer's purported misconduct. *Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 2:07-cv-3400 (D.N.J. Mar. 12, 2008), ECF No. 14 at 8-10 (emphasis added). Here too, it is inadequate for Plaintiff to allege that it lost patients due to Defendants' purported misconduct. Rather, Plaintiff must point to a particular contract or a specific business relationship that was likely to be actualized.

the plaintiff did not "identify one physician, company, or other entity, with whom it . . . ha[d] the reasonable expectation of doing business in the future." *Id.* at *7. Instead, the plaintiff alleged the loss of commercial relationships with "an undefined and indefinite group" of customers, which the Court found to be inadequate. *Id.* Here too, Plaintiff inadequately alleges the loss of business relationships with an unknown group of patients. Indeed, Plaintiff does not identify any individual from whom it anticipates payments. Rather, Plaintiff asserts that Defendants stopped reimbursing for the provision of medical services to Plaintiff's patients and Defendants' insurance subscribers based on alleged failures to meet out-of-network coverage conditions. Plaintiff also maintains that Defendants conducted an audit and communicated with patients in connection with the decision. But without more, Plaintiff cannot state a claim for relief against Defendants for tortious interference with prospective economic advantage.[7]

### B. Whether the Claims Should Be Dismissed with Prejudice

"Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citations omitted). For example, "[t]he District Court has discretion to deny a plaintiff leave to amend where the

---

[7] Additionally, the cases cited by Plaintiff are inapposite. *See* ECF No. 83 at 26-30. Five of the cases apply the lenient notice pleading standard, rather than the more stringent standard set out in *Twombly* and *Iqbal*. *See Syncsort Inc. v. Innovative Routines Int'l, Inc.*, 2005 WL 1076043, at *12-13 (D.N.J. May 6, 2005); *Floorgraphics, Inc. v. New Am. Mktg. In-Store Servs., Inc.*, 2006 WL 2846268, at *5 (D.N.J. Sept. 29, 2006); *Slim CD, Inc. v. Heartland Payment Sys., Inc*, 2007 WL 2459349, at *4 (D.N.J. Aug. 24, 2007); *Teva Pharm. Indus., Ltd. v. Apotex, Inc.*, 2008 WL 3413862, at *9 (D.N.J. Aug. 8, 2008); *see also Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 2010 WL 5239238, at *4 (D.N.J. Dec. 16, 2010) (decided after *Twombly* and *Iqbal*, but applying the standard set out *Syncsort*, *Floorgraphics*, and *Teva*). These five cases also involve allegations that are more detailed than the allegations at issue here. *See Syncsort*, 2005 WL 1076043, at *12-13 (describing "non-disclosure agreements" that were breached and "a tentative agreement" that was impeded so that the tortfeasor could snatch customers by undercutting on price and paying off debts); *Floorgraphics*, 2006 WL 2846268, at *5-6 (identifying "retailers by name" for whom contracts and business opportunities were lost); *Slim CD*, 2007 WL 2459349, at *3 (describing a "potential sale" of a company that was undermined by non-compliance with conditions that were openly discussed with the tortfeasor); *Teva*, 2008 WL 3413862, at *9 (describing how "the supply of carvedilol" necessary for drug products was impeded by the tortfeasor through lawsuits aimed at blocking supply); *Church & Dwight*, 2010 WL 5239238, at *4 (identifying the lost business opportunity as a favorable study in a particular magazine that had previously delivered "economic benefit"). Similarly, two other cases involve more detailed allegations. *See Graco, Inc. v. PMC Glob., Inc.*, 2009 WL 904010, at *32 (D.N.J. Mar. 31, 2009) (alleging that customers stopped buying products because the tortfeasor disparaged products in front of customers, issued ultimatums to customers, and announced it would not deal with distributors who carried products); *Iron Bar, LLC v. Dougherty*, 2021 WL 363706, at *10 (D.N.J. Feb. 3, 2021) (alleging that customers were prevented from accessing the premises because roadblocks made the premises inaccessible to handicapped individuals and ride-sharing services). Moreover, the final case cited by Plaintiff involves a "Defendant [who] does not challenge the first two elements" of tortious interference with prospective economic advantage, which are at issue here. *Call, Inc. v. Advanced Health Media, LLC*, 2012 WL 1079652, at *3 (D.N.J. Mar. 30, 2012).

plaintiff was put on notice as to the deficiencies in his complaint but chose not to resolve them." *Krantz v. Prudential Investments Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002). Alternatively, "[w]here an amended pleading would be futile, that alone is sufficient ground to deny leave to amend." *Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007).

Here, Plaintiff was on notice that the First Amended Complaint did not allege "lost patients" or patients who decided to "withhold payment" for treatment. ECF No. 61 at 10-11 & n.4. Thereafter, the Second Amended Complaint alleged that Plaintiff lost patients because it could not collect payments, which patients decided to withhold. Second Am. Compl., ECF No. 79 ¶¶ 94-96, 98. Although these amendments do not resolve the deficiencies, the Court cannot conclude that Plaintiff made a bad faith attempt at resolution. Nor can the Court conclude that further amendments would be futile, as Plaintiff may well possess the requisite facts to adequately allege the loss of an existing contract or the loss of a reasonable expectation of economic advantage.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss [ECF No. 80] is **GRANTED.** Counts Six (tortious interference with contract) and Seven (tortious interference with prospective economic advantage) of Plaintiff's Second Amended Complaint are hereby **DISMISSED without prejudice**. Plaintiff may amend its complaint within fourteen (14) days to the extent it can cure the deficiencies outlined above. An appropriate Order accompanies this Opinion.

DATED: June 16, 2023

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
**United States District Judge**